23CA1740 Peo v Geerdes 02-12-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1740
Elbert County District Court No. 15CR67
Honorable Theresa Slade, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Shawn Edward Geerdes,

Defendant-Appellant.

---

ORDER AFFIRMED

Division II
Opinion by JUDGE SULLIVAN
Fox and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 12, 2026

---

Philip J. Weiser, Attorney General, Carmen Moraleda, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

April M. Elliott, Alternate Defense Counsel, Denver, Colorado, for Defendant-
Appellant

¶ 1    Defendant, Shawn Edward Geerdes, appeals the postconviction court's order denying his Crim. P. 35(c) motion for postconviction relief.  We affirm.

## I.    Background

¶ 2    In 2015, Geerdes shot and killed a business partner after encountering him in Geerdes' marijuana greenhouse.  Geerdes then put the body in the victim's car, drove the car to Jefferson County, and set the car on fire in a ravine.  This led to a wildfire that resulted in substantial property damage.

¶ 3    A jury found Geerdes guilty of second degree murder, intentionally setting a wildfire, and second degree arson — all felonies.  Based on Geerdes' five prior felony convictions, the trial court adjudicated him a habitual criminal under Colorado's Habitual Criminal Act (the Act).  *See* §§ 18-1.3-801 to -804, C.R.S. 2025.  The Act provides that any person who is convicted of a felony in Colorado and has also been convicted of at least three separate prior felonies, referred to as predicate offenses, "shall be adjudged an habitual criminal."  § 18-1.3-801(2)(a)(I).  After a court adjudicates a person a habitual criminal, the court must sentence them to imprisonment for "four times the maximum of the

1

presumptive range" for the underlying felony conviction, also called a triggering offense. § 18-1.3-801(2)(a)(I)(A).

¶ 4     Citing the heightened penalties required by the Act, the prosecution at sentencing requested that the court sentence Geerdes to ninety-six years in prison for second degree murder, forty-eight years for intentionally setting the wildfire, and twenty-four years for arson, with the latter two sentences running concurrently to one another but consecutively to the sentence for murder. Geerdes argued that the combined sentences requested by the prosecution would violate the Eighth Amendment's prohibition against cruel and unusual punishment because they would be disproportionately long. He also contended that a forty-eight-year prison sentence for the wildfire charge, by itself, would be disproportionately long.

¶ 5     The trial court disagreed with Geerdes and concluded that the sentences mandated by the Act were proportionate. It therefore sentenced him to

(1)     ninety-six years in the custody of the Department of Corrections (DOC) with five years of mandatory parole for second degree murder, a class 2 felony;

> (2) forty-eight years in the custody of DOC with five years of mandatory parole for intentionally setting a wildfire, a class 3 felony; and
>
> (3) twenty-four years in the custody of DOC with three years of mandatory parole for second degree arson, a class 4 felony.

¶ 6  The court ordered Geerdes to serve the wildfire and arson sentences concurrently to each other but consecutively to the murder sentence.  In total, the court sentenced Geerdes to 144 years in the custody of DOC.

¶ 7  Geerdes appealed to this court, asserting evidentiary and jury instruction errors.  *See People v. Geerdes*, slip op. at ¶ 8 (Colo. App. No. 17CA1906, June 11, 2020) (not published pursuant to C.A.R. 35(e)).  He didn't raise any proportionality argument.  A division of this court affirmed.  *Id.*

¶ 8  Geerdes then filed a pro se motion for postconviction review. The postconviction court appointed counsel, who filed a supplemental motion for postconviction relief.  In the supplemental motion, Geerdes argued that he was entitled to relief under Crim. P. 35(c)(2)(I) because his sentences were disproportionately harsh.

¶ 9    The postconviction court conducted an abbreviated proportionality review and concluded that Geerdes' sentences weren't grossly disproportionate.  It therefore denied Geerdes' motion.

¶ 10    Geerdes appeals, arguing that the postconviction court applied an incorrect methodology in performing its abbreviated proportionality review.

## II.    Successiveness

¶ 11    The People contend that Geerdes' postconviction motion is successive.  *See People v. Aarness*, 150 P.3d 1271, 1277 (Colo. 2006) ("On appeal, a party may defend the trial court's judgment on any ground supported by the record, whether relied upon or even considered by the trial court.").  We agree.

¶ 12    We have discretion to affirm a lower court's judgment on grounds different than those relied on by the lower court.  *See id.* at 1277; *People v. Hamm*, 2019 COA 90, ¶ 23.  We review de novo whether a postconviction motion is successive.  *People v. Thompson*, 2020 COA 117, ¶ 42.

¶ 13    With exceptions not applicable here, we are required to "deny any claim that could have been presented in an appeal previously

4

brought or postconviction proceeding previously brought." Crim. P. 35(c)(3)(VII); *see also People v. McDonald*, 2023 COA 23, ¶¶ 7-8, 24 (a postconviction request for a proportionality review is subject to Crim. P. 35(c)'s successiveness bar), *aff'd*, 2024 CO 75. Because Geerdes could have argued that his sentence is grossly disproportionate in his direct appeal, but didn't, his claim is successive. *See People v. Isom*, 2015 COA 89, ¶¶ 31-32 (constitutional claim that could have been raised on direct appeal denied as successive), *aff'd*, 2017 CO 110; *see also People v. Loris*, 2018 COA 101, ¶¶ 7-32 (analyzing contention, raised for the first time on direct appeal, that the defendant's sentence was grossly disproportionate).

¶ 14     Geerdes nonetheless argues that his claim isn't successive because Colorado courts have recognized that proportionality challenges are better raised and litigated before the district court rather than on direct appeal. But Geerdes *did* raise his proportionality contention before the trial court at sentencing. The court rejected his argument and he declined to appeal the issue, rendering his later proportionality claim successive. *See Isom*, ¶ 32. Had Geerdes raised his proportionality challenge on direct appeal,

the division could have remanded the case to the trial court if it believed that further factual development was necessary. Indeed, the court in *Wells-Yates v. People*, which Geerdes cites in support of this argument, did just that. 2019 CO 90M, ¶ 75 (*Wells-Yates I*).

¶ 15 Accordingly, we conclude that Geerdes' proportionality claim is barred as successive under Crim. P. 35(c)(3)(VII).

### III. Proportionality

¶ 16 Even if Geerdes' proportionality claim weren't successive, we would still conclude that his sentences aren't grossly disproportionate.

#### A. Applicable Law and Standard of Review

¶ 17 The United States Constitution and the Colorado Constitution prohibit cruel and unusual punishment. U.S. Const. amend. VIII; Colo. Const. art. II, § 20. A criminal sentence constitutes cruel and unusual punishment, and is therefore unconstitutional, when the sentence is "grossly disproportionate" to the crime. *Wells-Yates I*, ¶¶ 5, 10.

¶ 18 To determine whether a habitual criminal sentence is grossly disproportionate to the crime, a court must first conduct an abbreviated proportionality review. *See id.* at ¶¶ 10, 21. The

6

abbreviated proportionality review consists of two subparts: (1) analyzing the gravity or seriousness of each triggering offense and each predicate offense and (2) considering the harshness of the sentence imposed on each triggering offense. *Id.* at ¶ 23. If the defendant has multiple triggering offenses, the court must evaluate each sentence individually. *Id.* at ¶ 24.

¶ 19 Under the first subpart of the abbreviated proportionality review, a court should consider the harm caused to the victim or to society and the defendant's culpability. *Id.* at ¶ 12. But some crimes are considered per se grave or serious, and a court need not perform a fact-focused analysis for those crimes. *Id.* at ¶ 13; *People v. Crawley*, 2024 COA 49, ¶ 11. A crime is per se grave or serious if, "based on [its] statutory elements, [it] necessarily involve[s] grave or serious conduct." *Wells-Yates I*, ¶ 63.

¶ 20 In considering the harshness of the penalty under the second subpart of the abbreviated proportionality review, the court may consider the defendant's parole eligibility since parole can reduce the period of confinement and render the penalty less harsh. *Id.* at ¶ 14.

¶ 21 Overall, "[t]he court must scrutinize the triggering offense and the predicate offenses and determine whether in combination they are so lacking in gravity or seriousness so as to suggest that the sentence is unconstitutionally disproportionate to the crime, taking into account the defendant's eligibility for parole." *Id.* at ¶ 23.

¶ 22 If the abbreviated proportionality review gives rise to an inference of gross disproportionality, the court must then conduct an extended proportionality review. *Id.* at ¶ 15. But if the abbreviated proportionality review doesn't raise an inference of gross disproportionality, the court need not (and shouldn't) conduct an extended proportionality review. *Id.*

¶ 23 We review de novo whether a sentence is grossly disproportionate. *Id.* at ¶ 35. As a result, we may conduct our own abbreviated proportionality review. *See, e.g., Rutter v. People*, 2015 CO 71, ¶¶ 24-25.

### B.    Additional Background

¶ 24 At sentencing, the trial court adjudicated Geerdes a habitual criminal based on five prior felony convictions:

    (1)    second degree burglary in August 1993;

    (2)    second degree burglary in August 1993;

(3)    escape in August 1994;

(4)    possession with intent to distribute a schedule II controlled substance in October 1997; and

(5)    second degree burglary in January 1998.

¶ 25    The postconviction court analyzed the gravity and seriousness of each of Geerdes' triggering and predicate offenses and concluded:

- second degree murder is a per se grave and serious offense;

- intentionally setting a wildfire is a per se grave and serious offense;

- Geerdes' second degree arson conviction is a grave and serious offense under the facts of his case; and

- none of Geerdes' predicate offenses are grave or serious.

The court then considered the offenses together and concluded that Geerdes' sentences weren't grossly disproportionate.

## C.    Analysis

¶ 26    Geerdes contends the postconviction court erred by (1) relying on the numerosity of his predicate offenses, even though they weren't grave or serious; and (2) failing to assess the harshness of the penalty for each triggering offense.

9

¶ 27 As to Geerdes' first contention, we disagree that a court conducting an abbreviated proportionality analysis is foreclosed from considering the number of a defendant's predicate offenses if those offenses aren't grave or serious. In *Wells-Yates I*, our supreme court made clear that, "when the proportionality of a habitual criminal sentence is challenged, the grave or serious inquiry includes consideration of the defendant's history of felony recidivism." *Wells-Yates I*, ¶ 23. This is so even when the defendant's predicate offenses aren't particularly grave or serious. *See People v. Wells-Yates*, 2023 COA 120, ¶ 58 (*Wells-Yates II*).

¶ 28 As to Geerdes' second contention, our de novo review of the proportionality of his sentences convinces us that the postconviction court didn't err by denying his motion.

¶ 29 At the outset, we note that Geerdes doesn't challenge the postconviction court's conclusions that each of his three triggering offenses, but none of his predicate offenses, is grave and serious. We therefore dispense with the first subpart of the abbreviated proportionality analysis and proceed to address only the second subpart. *See Galvan v. People*, 2020 CO 82, ¶ 45 ("[C]ourts are well-advised to 'wait for cases to come' to them and to 'decide only

10

questions presented by the parties.'" (quoting *United States v. Sineneng-Smith*, 590 U.S. 371, 376 (2020))).

¶ 30     Turning to the second subpart — the harshness of the penalty — we recognize that Geerdes' 1994 escape conviction would likely be classified as a misdemeanor if it occurred today because it involved his unauthorized absence from a community corrections facility. *See* § 18-8-208.2(1)(a), (2)(b), C.R.S. 2025. Such a conviction couldn't be used to adjudicate a person a habitual criminal today. *See* § 18-1.3-801(5). We also recognize that "[t]he General Assembly treats most drug felonies as substantially less grave or serious today than it has in the past." *Wells-Yates I*, ¶ 58. But even considering these legislative changes as indicia of "evolving standards of decency" in Colorado when evaluating Geerdes' predicate offenses, *Wells-Yates II*, ¶ 64 (quoting *People v. Oldright*, 2017 COA 91, ¶ 16), we still conclude that Geerdes'

11

sentences for his three triggering offenses aren't grossly disproportionate.[1]

¶ 31    Geerdes' ninety-six-year sentence for second degree murder, while harsh, isn't so harsh as to raise an inference of gross disproportionality. Geerdes doesn't dispute that second degree murder is a per se grave or serious offense. *See Crawley*, ¶ 22. This designation renders Geerdes' murder sentence "nearly impervious to attack on proportionality grounds." *Wells-Yates I*, ¶ 62 (citation omitted). And although the postconviction court found that his five predicate offenses weren't grave or serious, we can't conclude on this record that the legislature's habitual criminal sentencing determination for second degree murder raises an inference of gross disproportionality. *See id.* at ¶ 21 (explaining that an abbreviated proportionality review "will almost always yield a finding that the sentence is not unconstitutionally

---

[1] While we recognize that parole eligibility is a factor we must consider, *Wells-Yates v. People*, 2019 CO 90M, ¶ 14, Geerdes isn't currently eligible for parole for more than eighty years. By then, Geerdes would be over 135 years old. So, practically speaking, his parole eligibility can't "reduce the actual period of confinement [or] render the penalty less harsh." *Id.* Our analysis therefore presumes that Geerdes isn't eligible for parole.

12

disproportionate"); *cf. Rutter*, ¶ 25 (affirming ninety-six-year sentence for manufacturing methamphetamine when the defendant had three prior felony drug convictions).

¶ 32    Nor can we conclude that Geerdes' forty-eight-year sentence for intentionally setting a wildfire is so harsh as to raise an inference of gross disproportionality.  The postconviction court determined that Geerdes' wildfire conviction was a grave and serious offense, and Geerdes doesn't challenge that determination. Further, the court complied with the Act when it imposed a forty-eight-year sentence.  *See Wells-Yates I*, ¶ 62 (Once a court determines that an offense is grave or serious, "any review in the second subpart is substantially circumscribed because the legislature's establishment of the harshness of the penalty deserves great deference.").

¶ 33    Even accepting that Geerdes' five predicate offenses weren't grave or serious, Geerdes' actions that led to the wildfire were destructive and egregious.  *See Crawley*, ¶ 26 (concluding the defendant's lack of prior felony convictions didn't outweigh the fact that his crime led to deaths and injuries).  Geerdes set the car on fire in an attempt to cover up his murder of the victim and, in doing

so, started a wildfire that resulted in significant property damage. Further, Geerdes' demonstrated recidivism brings his conduct squarely within the Act's purpose of "punishing more severely 'those individuals who show a propensity toward repeated criminal conduct.'" *Wells-Yates*, ¶ 1 (quoting *People v. Dist. Ct.*, 711 P.2d 666, 670 (Colo. 1985)); *see also Wells-Yates II*, ¶¶ 66-68 (concluding that quadrupled sentences weren't grossly disproportionate, even though predicate offenses weren't especially grave or serious, given the serious aspects of the triggering offenses and the defendant's history of recidivism).

¶ 34    For many of the same reasons, we reach the same conclusion with respect to Geerdes' twenty-four-year sentence for second degree arson. As with his wildfire sentence, Geerdes doesn't challenge the postconviction court's determination that his arson offense was grave and serious. Moreover, the trial court sentenced Geerdes in compliance with the Act. *See Wells-Yates I*, ¶ 62.

¶ 35    While we recognize that these sentences are long, this isn't one of the "exceedingly rare" cases in which the defendant can successfully show an unconstitutionally disproportionate sentence. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J.,

concurring in part and concurring in the judgment) (quoting *Solem v. Helm*, 463 U.S. 277, 290 (1983)).

## IV. Disposition

¶ 36    We affirm the order.

JUDGE FOX and JUDGE KUHN concur.